## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZOOMINFO TECHNOLOGIES LLC, ) | |
| ) | |
| Plaintiff, ) | C.A. NO. _____ |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| ZENLEADS INC. (d/b/a APOLLO.IO), ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff ZoomInfo Technologies LLC ("ZoomInfo") files this Complaint against Defendant Zenleads Inc. d/b/a Apollo.io ("Apollo") and alleges the following:

## NATURE OF THE ACTION

1.      Since its founding in 2007, ZoomInfo has revolutionized the business intelligence and go-to-market ("GTM") solutions industry through genuine innovation, not imitation.  What began as a $25,000 credit card investment by founder Henry Schuck in his law school apartment has grown into a market-leading enterprise serving over 35,000 businesses worldwide with trusted data, advanced automation, and agent-ready insights.

2.      Defendant Apollo, founded more than a decade after ZoomInfo, chose a fundamentally different path.  Rather than investing in original research and development, Apollo built its business by systematically copying ZoomInfo's innovations.  This lawsuit seeks to stop Apollo's deliberate and ongoing infringement of ZoomInfo's patented technologies.

3.      While companies across the industry once focused merely on sheer data accumulation, ZoomInfo transformed the market with technological solutions that combine company, contact, and signal data into a single, dynamic system.  Integrating seamlessly with tech

stacks and client relationship management ("CRM") systems, ZoomInfo's platform offers a living view of a company's Total Addressable Market and enables teams to prioritize high-value accounts, access real-time insights, and automate strategic outreach. ZoomInfo's AI-driven Copilot product has revolutionized the sales experience, fueled data-driven decisions, and personalized customer outreach.

4.    ZoomInfo's success stems from anticipating evolving business needs. Long before ChatGPT and other publicly available LLMs made "AI" and "machine learning" part of everyday conversations, ZoomInfo was ahead of the pack in AI-powered automation. In just the last three years alone, ZoomInfo has committed more than $500 million to research and development ("R&D"), supporting over 800 employees dedicated to advancing these technologies. ZoomInfo's agent-ready data ecosystem is designed to power both internal and external AI solutions, ensuring that businesses can act on timely, relevant insights—and do so while adhering to the strictest standard for privacy protection and for the ethical use of AI.

5.    ZoomInfo's groundbreaking contributions to the field of go-to-market technology are protected with a patent portfolio that includes the patents at the heart of this lawsuit.

6.    Defendant Apollo, by its own admission, was "on the brink of extinction" just two years ago. Rather than innovating itself back to relevance, Apollo used an influx of venture capital funding to copy and use ZoomInfo's technology without authorization. Apollo explicitly markets itself as a "ZoomInfo replacement" and encourages customers to "replace ZoomInfo" with its copycat products.

7.    While Apollo's CEO describes the company's strategy as "[o]ptimize ruthlessly," the evidence tells a different story. Multiple employee reviews on Glassdoor.com reveal that Apollo's management "frequently instructs [its employees] to simply imitate our competitors

- 2 -

without any original thinking." Another employee states plainly that Apollo is "[n]ot built to solve user problems" but "[j]ust [for] copying competitors." A third alleges that Apollo's "[l]eaderships [sic] definition of product strategy involves cloning competitors' products at a fraction of the quality […]."

8.      The Patent Laws of the United States have a term for this behavior: *patent infringement*. These laws do not permit a company to steal another company's technology. Innovation deserves protection. Investment in research and development warrants reward. The foundation of America's patent system—and indeed, the American dream itself—depends on these principles.

9.      By this action, ZoomInfo seeks to put a stop to Apollo's illegal conduct and obtain compensation for the violations that are continuing and have occurred to date. Accordingly, this is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code. Apollo has infringed and continues to infringe, directly and/or indirectly, U.S. Patent Nos. 10,380,609 ("'609 Patent") and 11,392,964 ("'964 Patent") (collectively, the "Asserted Patents") in violation of 35 U.S.C. § 271.

## THE PARTIES

10.      Plaintiff ZoomInfo Technologies LLC is a Delaware limited liability company with a principal place of business located at 805 Broadway Street, Suite 900, Vancouver, Washington, 98660.

11.      Defendant Zenleads Inc. (d/b/a Apollo.io) is a Delaware corporation with a principal place of business located at 440 N. Barranca Ave. #4750 Covina, California, 91723.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over the action pursuant to the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, and pursuant to 28 U.S.C. §§ 1331 and 1338(a),

because ZoomInfo's claims against Apollo arise out of the Patent Laws of the United States and raise a federal question.

13.    This Court has personal jurisdiction over Apollo based upon its purposeful, systematic, and continuous contacts with Delaware, including its formation under the laws of the State of Delaware.  Further, Apollo has committed acts of patent infringement in this Judicial District, in the State of Delaware, and elsewhere in the United States.

14.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and/or 1400(b) because Apollo is formed under the laws of the State of Delaware and therefore resides in this District and is subject to personal jurisdiction in this District.

## BACKGROUND

15.    This case seeks to remedy Apollo's past and continued infringement of ZoomInfo's patents.  The following background sets the stage for ZoomInfo's formal request for relief.

### *ZOOMINFO'S INNOVATION AND INDUSTRY LEADERSHIP*

16.    ZoomInfo was founded in 2007 by Henry Schuck, who currently serves as its Chairman and Chief Executive Officer.  Mr. Schuck's entrepreneurial journey began at the age of 12, when he started selling newspapers door-to-door, developing fundamental sales skills that would later inform his business vision.

17.    Mr. Schuck's path to founding ZoomInfo exemplifies the American dream of entrepreneurial success through hard work and innovation.  As the son of an immigrant single mother who raised two children on her own, Mr. Schuck began his college education with just $5,000 from a life insurance policy, funding the rest of his education on his own.

18.    To support himself during college, Mr. Schuck began working at one of the first Software-as-a-Service ("SaaS") sales intelligence companies.  There, he saw firsthand how customers wasted countless hours hunting for data and insights to identify and reach prospects.

For all the advances of the Internet revolution, there was still no effective solution to the unique challenges facing the sales intelligence industry using conventional computer programming or network technology.

19.     In 2007, Mr. Schuck and his co-founder had the entrepreneurial courage to put $25,000 on their personal credit cards and establish DiscoverOrg—the company that would eventually become ZoomInfo and revolutionize the industry.

20.     Under Mr. Schuck's leadership, the company grew from a dorm room startup to a Nasdaq-listed company employing nearly 4,000 people around the world.

21.     Over more than fifteen years, ZoomInfo has invested substantially in R&D to create its suite of proprietary systems for data collection, verification, enrichment, and organization, advancing the state of the art in GTM intelligence technology.  ZoomInfo has supplemented its internal efforts with strategic acquisitions to enhance its technology capabilities and market offerings.

22.     In February 2019, DiscoverOrg acquired Zoom Information, Inc., subsequently rebranding the combined company "ZoomInfo"—a pivotal development that united complementary technologies and established the company as the uncontested leader in the business intelligence space.

23.     In November 2020, ZoomInfo completed another significant acquisition by purchasing EverString, a leading AI-powered business-to-business ("B2B") data solutions provider built by experts in natural language processing and deep learning.  The acquisition allowed the company to build an innovative data platform that harnessed artificial intelligence, robust web indexing, and machine learning algorithms to deliver industry-leading B2B data coverage and depth.  The combined EverString and ZoomInfo Data Cloud became the first-ever

business identity graph of its size with a level of accuracy and completeness purposely built to help go-to-market teams identify actual buying centers.

24.    To protect the valuable innovations developed through internal research and strategic acquisitions, ZoomInfo and its acquired companies have secured a substantial intellectual property portfolio, including United States patents that cover core technological innovations in business intelligence data aggregation, verification, and analysis methodologies.

25.    These protected innovations include the '609 and '964 Patents, which protect critical aspects of the company's AI and machine-learning methodologies for collecting, processing, and surfacing the most relevant and timely business information.  The protected innovations enable ZoomInfo's customers to identify and contact prospects in the market for their products, in the right way, and at the right time.

26.    Today, ZoomInfo's platform, built through this combination of organic innovation and strategic acquisition, serves approximately 35,000 companies across diverse industries, including numerous Fortune 500 organizations that rely on its data and technology solutions.

### *APOLLO'S UNLAWFUL COPYING OF ZOOMINFO*

27.    Apollo entered the business intelligence market in 2015, approximately eight years after Mr. Schuck founded ZoomInfo (then DiscoverOrg) and long after ZoomInfo had begun establishing its innovative presence in the industry.

28.    Like ZoomInfo, Apollo offers go-to-market intelligence and sales engagement software—but without the same history of organic innovation and development.  Apollo has consistently implemented features and functionalities in its products that mimic ZoomInfo's proprietary innovations, including technologies acquired through ZoomInfo's strategic acquisitions.

29.    Apollo now offers computing devices and systems programmed to crawl the Internet to predictively generate client data. These offerings, including the "Apollo Platform," "Apollo AI," "Apollo Sales Automation" and "Apollo Labs" ("Apollo Accused System"), which directly compete with ZoomInfo's offerings in the GTM intelligence marketplace.

30.    Apollo conspicuously touts that its Accused System "[r]eplaces: ZoomInfo" with an automated "end-to-end AI sales platform" that uses a large "living data network and AI recommendations" to provide market intelligence.[1] Apollo's strategy—taking ZoomInfo's innovations and marketing itself as a direct competitor, in order to target ZoomInfo's customer base—is unlawful.

31.    Further highlighting this competitive positioning, Apollo actively solicits and publishes—in what appears to be a selective manner—user reviews that directly compare the Apollo Accused System with the ZoomInfo Platform,[2] creating a curated narrative of competitive equivalence despite the significant disparity in innovation and R&D investment between the two companies.

32.    Evidence from employee reviews on Glassdoor reveals a deliberate internal policy of imitation at Apollo. According to one employee post, management at Apollo "frequently instructs [its employees] to simply imitate our competitors without any original thinking." Exhibit 1, April 8, 2024 Glassdoor Review of Apollo.io, p. 2 of 7.

---

[1] https://www.apollo.io/product; https://www.apollo.io/product/search; https://netlify.apollo.io/_next/static/media/background.

[2] https://www.apollo.io/wall-of-love.

Apr 8, 2024  •••

1.0 ★☆☆☆☆ ˅

## Stop begging us to leave positive reviews. Here is my review.

 Anonymous employee

Current employee

✕ Recommend   ✕ CEO approval   ✕ Business outlook

**Pros**
Some of my co-workers are great. It seems like many of us are facing similar challenges.

**Cons**
HR requests positive reviews to overshadow negative ones that acknowledge a toxic culture. Apollo's culture is highly detrimental and unhealthy. I'm going to keep it real.

Let's start at the top. Tim, the CEO, micromanages everything down to the lowest-level IC employees. The product's condition is awful, which can be attributed to his leadership and his constantly changing priorities. His unpredictable mood swings affect the priorities of the squads. It is not uncommon for Tim to berate during meetings. The lack of clear direction is causing further damage to the product. If anyone tries to oppose him, they are terminated from their employment. He frequently instructs us to simply imitate our competitors without any original thinking. He does not encourage unique approaches. There is no understanding of the user.

A separate review, identified as originating from a different Apollo employee, states that Apollo is "[n]ot built to solve user problems," but rather "[j]ust [for] copying competitors." Exhibit 2, February 13, 2024 Glassdoor Review of Apollo.io, p. 6 of 7.

**Pros**
-Some people are very smart and nice.
-Joining comp can be competitive, depending on team.

**Cons**
-Massive micromanagement. Why is something suddenly urgent? Why was a huge change made? Because the ceo says. Period.
-Toxic, inexperienced leadership. Some are incompetent and were brought in by the most recent, now gone cpo.
-Leaders don't last long. Revolving door which means no strategy or processes remain for long. Expect changes quarterly so you never know what to do.
-Gaslighting. No matter how much experience you have at mature companies, you will begin to question if you're crazy.
-Zero accountability for many. Product management is like nothing seen before. Most don't know the product. Not that it matters since it is all down to what the ceo wants.
-Lack of alignment and communication across teams.. Teams don't know what each other is doing or how their product areas overlap or inform each other of implications changes could have. Leads to many avoidable problems.
-Not built to solve user problems. Just copying competitors. Feature factory with nothing unifying. If you disagree with ceo or vp, you are overruled. they know best. If you want to think and be heard, look elsewhere.
-No HR. Big red flag.
-Very low morale. People struggle to make it through the day and week.
-Unreasonable timelines and huge workloads. If you complain, it's on you for not being able to handle it.
-Total disorganization. No way to track what is happening or coming.

A third post, apparently from yet another employee, explains that Apollo "[l]eaderships [sic] definition of product strategy involves cloning competitors' products at a fraction of the quality using offshore contract labor." Exhibit 3, March 26, 2024 Glassdoor Review of Apollo.io, p. 3 of 7.

## For your health, just don't.

 Anonymous employee

Former employee, more than 1 year

✗ Recommend    ✗ CEO approval    — Business outlook

**Pros**
- Pays well
- Interesting technical space
- Ample opportunities to take on more responsibility

**Cons**
I don't want to repeat what's already been mentioned in past reviews (read these).
Here were some of my qualms:

- No clear long term company or product strategy. Completely unacceptable for a
Series D company. The company is clearly riding high from a series of lucky early
bets that are now paying off. Leaderships definition of product strategy involves
cloning competitors' products at a fraction of the quality using offshore contract
labor.
- Zero change management present in the product development organization.
Major processes change extremely quickly and without any clear rhythm or
reason. This creates an atmosphere of chaos and confusion, exacerbated by a
globally distributed & fully remote team.
- Really poor and inexperienced people management. You feel like a number at
Apollo and not much more.

33.    Apollo posted contemporary responses to these reviews, indicating that its senior
management was likely aware of these multiple internal reports of "copying" and "cloning."
Despite this apparent knowledge, less than a year later—in a January 2025 post—Apollo's CEO
publicly boasted that a key strategic principle for his company was to "[o]ptimize ruthlessly,"
raising questions about the legality and ethics of Apollo's so-called optimization practices in light
of the employee allegations.  Based on the publicly available information, Apollo's questionable
business practices are evident.

## *ZOOMINFO'S ASSERTED PATENTS*

34.    On August 13, 2019, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued the '609 Patent, entitled "Web Crawling For Use In Providing Leads Generation And Engagement Recommendations." ZoomInfo is the owner by assignment of all right, title, and interest in the '609 Patent. A true and correct copy of the '609 Patent is attached as Exhibit 4 hereto.

35.    On July 19, 2022, the USPTO duly and lawfully issued the '964 Patent, entitled "Predictive Analytics For Leads Generation And Engagement Recommendations." ZoomInfo is the owner by assignment of all right, title, and interest in the '964 Patent. A true and correct copy of the '964 Patent is attached as Exhibit 5 hereto.

36.    The '609 and '964 Patents are directed to computing devices and systems programmed to crawl the Internet to predictively generate client data. The Asserted Patents claim specific technological improvements over prior web crawling devices and systems, as indicated by the Patent Examiner in the shared file history of the Asserted Patents. Referencing Claim 1 of the '609 Patent, the Examiner provided a reason for allowance, finding that the claimed "specific manner of crawling reflects an improvement in the functioning of a computer, or an improvement to other technology or technical field (e.g. web crawling)." Exhibit 6, '609 Patent Notice of Allowance, June 4, 2019, p. 3. The Examiner further noted that the patent claims provide "inventive concepts because they provide an improved methodology of web crawling," which goes "beyond what is well-understood, routine, and conventional in the industry (i.e., this [invention] amounts to more than using the Internet for 'mere data gathering')." *Id*., at pp. 3-4. According to the Examiner, the "combination of the steps" recited in the patent claims "gather data in an unconventional way and therefore include an inventive concept." *Id.* at p. 4. The Examiner thus changed the title of the patent to "Improved Web Crawling For Use In Providing Leads Generation

And Engagement Recommendations" (although the term "Improved" is not printed on the face of the patent). *Id.*

## <u>COUNT I – INFRINGEMENT OF THE '609 PATENT</u>

37.     ZoomInfo re-alleges and incorporates by reference the allegations set forth in paragraphs 1-36 of this Complaint.

38.     Apollo uses, offers to sell, and/or sells in the United States certain services, products, and systems that infringe the '609 Patent, including but not limited to the Apollo Accused System.

39.     More specifically and without limitation, Apollo has been and is directly infringing pursuant to 35 U.S.C. § 271(a), at least Claim 1 of the '609 Patent by using, offering to sell, and/or selling the Apollo Accused System in the United States.

40.     Claim 1 of the '609 Patent recites:

A computer-implemented method, wherein one or more computing devices comprising storage and a processor are programmed to perform steps comprising:

[a]     determining, using a computer, similarities between (a) fitness, engagement, and intent characteristics of a plurality of target clients and (b) fitness, engagement, and intent characteristics of an entity's existing clients;

[b]     generating recommendations for engagement with the plurality of target clients, wherein components of the recommendations for engagement are based on determined similarities between (a) the fitness, engagement, and intent characteristics of the plurality of target clients and (b) the fitness, engagement, and intent characteristics of the entity's existing clients;

[c]     categorizing a plurality of web pages, hyperlinks, and link structures located over the Internet using a trained classifier that uses features from content and code on web pages;

[d]     crawling, by a computer, the plurality of web pages, hyperlinks, and link structures based on the categorization of the plurality of web pages, hyperlinks, and link structures to collect third party unstructured text information; and

[e]     generating a feature matrix for the target client and comparing one or more value of the feature matrix of the target client with one or more values of a feature matrix for the entity's existing clients to generate the recommendations of engagement.

41.    On information and belief, Apollo performs step [a] of Claim 1.  For example, the search functionality of Apollo's Accused System allows filtering by parameters such as company industry, number of employees, buying intent, and website visits, as described on Apollo's website.[3]   Apollo uses these filters to find and compare companies that have characteristics matching the user's Ideal Customer Profile ("ICP"), as described on its website.[4]   Additionally, the filtered search results can be sorted by relevance and scored.[5]

42.    On information and belief, Apollo performs step [b] of Claim 1.  For example, Apollo's website describes that the Apollo Accused System prioritizes companies for engagement, in part, by assessing the "relative importance of these criteria, assigning each one a weight for a precise ranking," resulting in an "AI auto-generated scoring model that empowers you to swiftly spot prospects with the highest potential for success."[6]   In performing a search using the Apollo Accused System, a user can click on a result and access the "Recommendations" tab to view the "high-value prospects" that fit the targeted criteria.[7]

---

[3] https://knowledge.apollo.io/hc/en-us/articles/26595261473805-Use-Website-Visitors-Data; https://knowledge.apollo.io/hc/en-us/articles/4412665755661-Search-Filters-Overview#h_01JE6Q56Y1ACCGMKBVXBXBGNWM; https://knowledge.apollo.io/hc/en-us/articles/8047704465933-Buying-Intent-Overview; https://www.apollo.io/product/prospect-and-enrich.

[4] https://www.apollo.io/magazine/how-to-do-data-enrichment-the-right-way; https://knowledge.apollo.io/hc/en-us/articles/4416471135245-Identify-Your-Ideal-Customer-Profile-ICP.

[5] https://knowledge.apollo.io/hc/en-us/articles/4988048582285-Scores-Overview#h_01JCK7Y1A3BN17HPDF8RQZKWFW; https://www.apollo.io/magazine/identify-your-perfect-leads-with-ai-powered-lead-scoring.

[6] https://www.apollo.io/magazine/identify-your-perfect-leads-with-ai-powered-lead-scoring; https://www.apollo.io/magazine/built-in-customer-story.

[7] https://knowledge.apollo.io/hc/en-us/articles/20747906147853-Use-Recommendations-for-More-Efficient-Prospecting-in-Apollo.

43.     On information and belief, Apollo performs step [c] of Claim 1.  Apollo's website describes that the Apollo Accused System "has proprietary algorithms that regularly crawl the web at scale, parse millions of public-facing websites, and build a web-wide index of people and company data," based on web page features.[8]  According to Apollo "[w]e consistently expand and refine our living data network," using public data crawling of the Internet and "proprietary data verification methods."[9]

44.     On information and belief, Apollo performs step [d] of Claim 1.  Apollo's website describes that the Apollo Accused System  uses "proprietary algorithms that regularly crawl the web" with consistently verified data.[10]  According to Apollo, one of the most powerful uses of the Apollo Accused System is its ability to "dig deep on leads" to "gain key insights like intent data [and] employee trends" using "[a]lgorithms [that] are continuously learning and improving with time and as more data rolls in and trends change, scoring models auto-adjust themselves along with your ICP."[11]

45.     On information and belief, Apollo performs step [e] of Claim 1.  For example, the "Recommendations" tab appears to invoke an underlying matrix for the target client, including

---

[8] https://www.apollo.io/product/living-data-network.

[9] https://knowledge.apollo.io/hc/en-us/articles/19331318468621-Apollo-Data-Overview;
https://www.apollo.io/product/living-data-network.

[10] https://www.apollo.io/product/living-data-network.

[11] https://www.apollo.io/product/living-data-network; https://www.apollo.io/magazine/identify-your-perfect-leads-with-ai-powered-lead-scoring.

particular values for specific categories, which is used by the Apollo Accused System to make matrix-based comparisons with user-defined features and other criteria of existing clients.[12]

46.    Apollo does not have a license or permission to use the '609 Patent.

47.    Upon information and belief, Apollo has derived and received, and will continue to derive and receive, gains, profits, and advantages from the aforesaid acts of infringement in an amount not presently known to ZoomInfo.  Apollo's infringing acts have caused damage to ZoomInfo, and ZoomInfo is entitled to monetary relief in an amount to be determined at trial.

48.    As a result of Apollo's infringement of the '609 Patent, ZoomInfo has suffered and will continue to suffer damages including lost profits, in an amount not yet determined, but no less than a reasonable royalty, together with interest and costs as fixed by the Court.

49.    Apollo will continue to infringe the '609 Patent unless permanently enjoined by this Court.  As a result of Apollo's infringing conduct, ZoomInfo has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  ZoomInfo is therefore entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

## COUNT II – INFRINGEMENT OF THE '964 PATENT

50.    ZoomInfo re-alleges and incorporates by reference the allegations set forth in paragraphs 1-49 of this Complaint.

51.    Apollo uses, offers to sell, and/or sells in the United States certain services, products, and systems that infringe various claims of the '964 Patent, including but not limited to the Apollo Accused System.

---

[12] https://knowledge.apollo.io/hc/en-us/articles/20747906147853-Use-Recommendations-for-More-Efficient-Prospecting-in-Apollo.

52.    More specifically and without limitation, Apollo has been and is directly infringing pursuant to 35 U.S.C. § 271(a), at least Claim 1 of the '964 Patent by using, offering to sell, and/or selling the Apollo Accused System in the United States.

53.    Claim 1 of the '964 Patent recites:

A computer-implemented method, wherein one or more computing devices comprising storage and a processor are programmed to perform steps comprising:

[a]    generating recommendations for engagement with the plurality of target clients, wherein components of the recommendations for engagement are based on determined similarities between (a) a fitness, engagement, and intent characteristics of the plurality of target clients and (b) a fitness, engagement, and intent characteristics of the entity's existing clients;

[b]    categorizing a plurality of web pages, hyperlinks, and link structures located over the Internet using a trained classifier that uses features from content and code on web pages;

[c]    crawling, by a computer, the plurality of web pages, hyperlinks, and link structures based on the categorization of the plurality of web pages, hyperlinks, and link structures to collect third party unstructured text information; and

[d]    generating a feature matrix for the target client and comparing one or more value of the feature matrix of the target client with one or more values of a feature matrix for the entity's existing clients to generate the recommendations of engagement.

54.    On information and belief, Apollo performs step [a] of Claim 1.  For example, Apollos's website describes that the Apollo Accused System prioritizes companies for engagement, in part, by assessing the "relative importance of these criteria, assigning each one a weight for a precise ranking," resulting in an "AI auto-generated scoring model that empowers you to swiftly spot prospects with the highest potential for success."[13]  In performing a search using the Apollo Accused System, a user can click on a result and access the "Recommendations" tab to view the "high-value prospects" that fit the targeted criteria.[14]

---

[13] https://www.apollo.io/magazine/identify-your-perfect-leads-with-ai-powered-lead-scoring; https://www.apollo.io/magazine/built-in-customer-story.

[14] https://knowledge.apollo.io/hc/en-us/articles/20747906147853-Use-Recommendations-for-More-Efficient-Prospecting-in-Apollo.

55.    On information and belief, Apollo performs step [b] of Claim 1.  Apollo's website describes that the Apollo Accused System "has proprietary algorithms that regularly crawl the web at scale, parse millions of public-facing websites, and build a web-wide index of people and company data," based on web page features.[15]  According to Apollo "[w]e consistently expand and refine our living data network," using public data crawling of the Internet and "proprietary data verification methods."[16]

56.    On information and belief, Apollo performs step [c] of Claim 1.  Apollo's website describes that the Apollo Accused System is "continually optimizing" and "operating," using "proprietary algorithms that regularly crawl the web."[17]  According to Apollo, one of the most powerful uses of the Apollo Accused System is its ability to "dig deep on leads" to "gain key insights like intent data [and] employee trends" using "[a]lgorithms [that] are continuously learning and improving with time and as more data rolls in and trends change, scoring models auto-adjust themselves along with your ICP."[18]

57.    On information and belief, Apollo performs step [d] of Claim 1.  For example, the "Recommendations" tab appears to invoke an underlying matrix for the target client, including

---

[15] https://www.apollo.io/product/living-data-network.

[16] https://knowledge.apollo.io/hc/en-us/articles/19331318468621-Apollo-Data-Overview; https://www.apollo.io/product/living-data-network.

[17] https://www.apollo.io/product/living-data-network.

[18] https://www.apollo.io/product/living-data-network; https://www.apollo.io/magazine/identify-your-perfect-leads-with-ai-powered-lead-scoring.

particular values for specific categories, which is used by the Apollo Accused System to make matrix-based comparisons with user-defined features and other criteria of existing clients.[19]

58.     Apollo does not have a license or permission to use the '964 Patent.

59.     Upon information and belief, Apollo has derived and received, and will continue to derive and receive, gains, profits, and advantages from the aforesaid acts of infringement in an amount not presently known to ZoomInfo.  Apollo's infringing acts have caused damage to ZoomInfo, and ZoomInfo is entitled to monetary relief in an amount to be determined at trial.

60.     As a result of Apollo's infringement of the '964 Patent, ZoomInfo has suffered and will continue to suffer damages including lost profits, in an amount not yet determined, but no less than a reasonable royalty, together with interest and costs as fixed by the Court.

61.     Apollo will continue to infringe the '964 Patent unless permanently enjoined by this Court.  As a result of Apollo's infringing conduct, ZoomInfo has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  ZoomInfo is therefore entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

## **PRAYER FOR RELIEF**

WHEREFORE, ZoomInfo prays for judgment in its favor against Apollo including:

A.     An Order adjudging Apollo to have infringed the '609 and '964 Patents under 35 U.S.C. § 271(a);

B.     An award of damages adequate to compensate ZoomInfo for Apollo's infringement;

---

[19] https://knowledge.apollo.io/hc/en-us/articles/20747906147853-Use-Recommendations-for-More-Efficient-Prospecting-in-Apollo.

C.      An Order that Apollo and each of its officers, employees, agents, attorneys, and any persons in active concert or participation with them are permanently restrained and enjoined from continued acts of infringement of the '609 and '964 Patents;

D.      An Order adjudging that this is an exceptional case under 35 U.S.C. § 285;

E.      An award to ZoomInfo of its costs and attorneys' fees;

F.      An award of pre-judgement and post-judgment interest and costs; and

G.      Such other relief as this Court or a jury may deem proper and just.

## JURY DEMAND

ZoomInfo demands a trial by jury on all issues so triable.

*[SIGNATURE PAGE FOLLOWS.]*

Dated: March 14, 2025

Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ Monté T. Squire*
Monté T. Squire (No. 4764)
1201 N. Market Street, Suite 501
Wilmington, DE  19801
Telephone: (302) 657-4900
mtsquire@duanemorris.com

OF COUNSEL:

Tia D. Fenton (*pro hac* forthcoming)
Telephone: (202) 776-7825
tdfenton@duanemorris.com
Elissa L. Sanford (*pro hac* forthcoming)
esanford@duanemorris.com
Telephone: (202) 776-5231
**DUANE MORRIS LLP**
901 New York Avenue N.W., Suite 700 East
Washington, DC 20001-4795

Matthew C. Gaudet (*pro hac* forthcoming)
**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 1700
Atlanta, GA 30309-3929
Telephone: (404) 253-6902
mcgaudet@duanemorris.com

*Counsel for Plaintiff ZoomInfo Technologies LLC*