## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ZOOMINFO TECHNOLOGIES LLC,

       Plaintiff,

v.

ZENLEADS INC., d/b/a APOLLO.IO,

       Defendant.

Before:  Jennifer Choe-Groves, Judge

Court No. 1:25-cv-00324-JCG

## <u>OPINION AND ORDER</u>

[Denying Defendant's Motion to Dismiss.]

Dated: December 15, 2025.

<u>Monté T. Squire</u>, Duane Morris LLP, of Wilmington, DE; <u>Tia D. Fenton</u> and <u>Elissa L. Sanford</u>, Duane Morris LLP, of New York, NY; <u>Gilbert A. Greene</u>, Duane Morris LLP, of Austin, TX; <u>Matthew C. Gaudet</u>, Duane Morris LLP, of Atlanta, GA; <u>Brianna M. Vinci</u>, Duane Morris LLP, of Philadelphia, PA.  Attorneys for Plaintiff ZoomInfo Technologies LLC.

<u>Adam W. Poff</u>, <u>Anne Shea Gaza</u>, and <u>Alexis N. Stombaugh</u>, Young Conaway Stargatt & Taylor, LLP, of Wilmington, DE; <u>Katherine Vidal</u> and <u>Joseph C. Masullo</u>, Winston & Strawn LLP, of Washington, D.C.; <u>Samantha M. Lerner</u>, Winston & Strawn LLP, of Chicago, IL; <u>Eimeric Reig-Plessis</u>, Winston & Strawn LLP, of San Francisco, CA.  Attorneys for Defendant Zenleads Inc., d/b/a Apollo.io.

     Choe-Groves, Judge: Plaintiff ZoomInfo Technologies LLC ("Plaintiff" or

"ZoomInfo") filed this case against Defendant Zenleads Inc., doing business as

Apollo.io ("Defendant" or "Apollo") alleging infringement of U.S. Patent

Numbers 10,380,609 ("'609 Patent") and 11,392,964 ("'964 Patent") (collectively,

"Asserted Patents" or "Patents").  Pl.'s First Am. Compl. Patent Infringement

("Am. Compl.") (D.I. 20); see Am. Compl. at Ex. 4 ("'609 Patent") (D.I. 20-1);

Am. Compl. at Ex. 5 ("'964 Patent") (D.I. 21).

Defendant filed Apollo's Motion to Dismiss First Amended Complaint

("Defendant's Motion" or "Def.'s MTD") (D.I. 25); Def.'s Opening Br. Supp.

Mot. Dismiss First Am. Compl. ("Def.'s Br.") (D.I. 26).  Plaintiff opposed the

motion, and Defendant filed a reply brief.  Pl.'s Answering Br. Opp'n Def.'s Mot.

Dismiss First Am. Compl. ("Pl.'s Resp. Br.") (D.I. 32); Def.'s Reply Br. Supp.

Def.'s Mot. Dismiss First Am. Compl. ("Def.'s Reply Br.") (D.I. 35).

For the reasons discussed below, Apollo's Motion to Dismiss is denied.

## BACKGROUND

According to its Amended Complaint, ZoomInfo is a Delaware limited

liability company with a principal place of business in Vancouver, Washington,

offers a living view of a company's Total Addressable Market, and enables teams

to prioritize high-value accounts, access real-time insights, and automate strategic

outreach.  Am. Compl. at ¶¶ 3, 10.  ZoomInfo states that its agent-ready data

ecosystem is designed to power both internal and external AI solutions, ensuring

that businesses can act on timely, relevant insights.  Id. at ¶ 4.  In addition,

ZoomInfo contends that its contributions to the field of go-to-market technology are protected with a patent portfolio, including the Asserted Patents.  Id. at ¶ 5.

The Amended Complaint states that ZoomInfo is the owner by assignment of all right, title, and interest in the Asserted Patents.  Id. at ¶¶ 34–35.  The Asserted Patents share a common specification and claim priority to the same provisional application, U.S. Patent Number 62/114,068, titled "Predictive Analytics for Leads Generation and Scoring."  '609 Patent at 1:8–11; '964 Patent at 1:8–16.  The '964 Patent is a continuation of the '609 Patent.  '964 Patent at [63].  The '609 Patent was issued by the United States Patent and Trademark Office ("USPTO") on August 13, 2019, and the '964 Patent was issued by the USPTO on July 29, 2022.  '609 Patent at [45]; '964 Patent at [45].  The '609 patent is titled "Web Crawling for Use in Providing Leads Generation and Engagement Recommendations" and is directed to an automated predictive analytics system providing for generating sales leads with lead engagement recommendations.  '609 Patent at [54], 1:36–37.  The '964 Patent is titled "Predictive Analytics for Leads Generation and Engagement Recommendations" and is directed to an automated predictive analytics system providing for generating sales leads with lead engagement recommendations.  '964 Patent at [54], 1:42–43.  Claim 1 of the '609 Patent recites:

A computer-implemented method, wherein one or more computing devices comprising storage and a processor are programmed to perform steps comprising:

determining, using a computer, similarities between (a) fitness, engagement, and intent characteristics of a plurality of target clients and (b) fitness, engagement, and intent characteristics of an entity's existing clients;

generating recommendations for engagement with the plurality of target clients, wherein components of the recommendations for engagement are based on determined similarities between (a) the fitness, engagement, and intent characteristics of the plurality of target clients and (b) the fitness, engagement, and intent characteristics of the entity's existing clients;

categorizing a plurality of web pages, hyperlinks, and link structures located over the Internet using a trained classifier that uses features from content and code on web pages;

crawling, by a computer, the plurality of web pages, hyperlinks, and link structures based on the categorization of the plurality of web pages, hyperlinks, and link structures to collect third party unstructured text information; and

generating a feature matrix for the target client and comparing one or more value of the feature matrix of the target client with one or more values of a feature matrix for the entity's existing clients to generate the recommendations of engagement.

'609 Patent at 17:12–39.

Claim 1 of the '964 patent is nearly identical, reciting:

A computer-implemented method, wherein one or more computing devices comprising storage and a processor are programmed to perform steps comprising:

generating recommendations for engagement with the plurality of target clients, wherein components of the recommendations for

engagement are based on determined similarities between (a) a fitness, engagement, and intent characteristics of a plurality of target clients and (b) a fitness, engagement, and intent characteristics of an entity's existing clients;

categorizing a plurality of web pages, hyperlinks, and link structures located over the Internet using a trained classifier that uses features from content and code on web pages;

crawling, by a computer, the plurality of web pages, hyperlinks, and link structures based on the categorization of the plurality of web pages, hyperlinks, and link structures to collect third party unstructured text information; and

generating a feature matrix for the target client and comparing one or more value of the feature matrix of the target client with one or more values of a feature matrix for the entity's existing clients to generate the recommendations of engagement.

'964 Patent at 17:12–35.

ZoomInfo contends that the methods claimed in the Asserted Patents represent technological improvements in computing devices and systems programmed to crawl the Internet to predictively generate client data, including the categorization of each page and/or hyperlink to control or guide the crawl procedure, significantly reducing the number of irrelevant pages crawled, reducing the time required from crawling a company's website, and increasing the precision or recall and reduces storage requirements.  Am. Compl. at ¶ 36.

According to ZoomInfo's Amended Complaint, Apollo is a Delaware corporation with a principal place of business in Covina, California, and offers go-to-market intelligence and sales engagement software.  Id. at ¶¶ 11, 28.  ZoomInfo

alleges that Defendant directly and/or indirectly infringed at least Claim 1 of the Asserted Patents by using, offering to sell, and/or selling computing devices and systems programmed to crawl the Internet to predictively generate client data, including but not limited to the "Apollo Platform," "Apollo AI," "Apollo Sales Automation," and "Apollo Labs" (collectively, the "Apollo Accused System"), in violation of 35 U.S.C. § 271. Id. at ¶¶ 9, 29, 41, 54.

ZoomInfo filed its Complaint in March 2025, alleging infringement of the Asserted Patents and seeking monetary damages and injunctive relief. See Compl. (D.I. 1). An Amended Complaint was filed on May 21, 2025. See Am. Compl. ZoomInfo alleges that Apollo has consistently implemented features and functionalities in its products that mimic ZoomInfo's proprietary innovations, including technologies acquired through ZoomInfo's strategic acquisitions. Id. at ¶ 28. ZoomInfo alleges further that the Apollo Accused System directly competes with ZoomInfo's offerings in the go-to-market intelligence marketplace by infringing at least Claim 1 of the '609 and '964 Patents. Id. at ¶¶ 9, 29.

Apollo filed a motion to dismiss ZoomInfo's Amended Complaint, arguing that the Asserted Patents fail to recite patent eligible subject matter under 35 U.S.C. § 101. Def.'s MTD; see Def.'s Br. The Court held oral argument on September 10, 2025. Oral Arg. (Sept. 10, 2025) (D.I. 49).

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which grant the Court jurisdiction over civil actions relating to patents, plant variety protection, copyright, and trademarks.  28 U.S.C. §§ 1331, 1338.  Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(1).  If a pleading fails to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal ("Iqbal"), 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly ("Twombly"), 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  Id.  In considering a motion to dismiss, the Court must assume that the factual allegations contained in the complaint are true.  Twombly, 550 U.S. at 555–56.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" to state a claim.  Iqbal, 556 U.S. at 678 (citing

Twombly, 550 U.S. at 555).

In patent infringement cases, allegations of infringement are governed by the

Iqbal/Twombly pleading standard.  Golden v. Apple Inc., 819 F. App'x 930, 930–

31 (Fed. Cir. 2020).  There must be some factual allegations that, when taken as

true, articulate why it is plausible that the accused product infringes the patent

claim.  Bot M8 LLC v. Sony Corp. ("Bot M8"), 4 F.4th 1342, 1353 (Fed. Cir.

2021).

## DISCUSSION

ZoomInfo's Amended Complaint alleges that Defendant infringed at least

Claim 1 of the '609 and '964 Patents.  Am. Compl. ¶¶ 41, 54.  Apollo moves to

dismiss ZoomInfo's claim for infringement of the '609 and '964 Patents for failure

to recite patent eligible subject matter under 35 U.S.C. § 101.  Def.'s MTD at 1;

Def.'s Br. at 1.  For the reasons that follow, the Court denies Apollo's motion to

dismiss.

## I.    Patent-Eligible Subject Matter

35 U.S.C. § 101 makes patentable "any new and useful process, machine,

manufacture, or composition of matter, or any new and useful improvement

thereof."  35 U.S.C. § 101.  This broad provision has an important exception:

"[l]aws of nature, natural phenomena, and abstract ideas are not patentable."  Alice

Corp. Pty. Ltd. v. CLS Bank Int'l ("Alice"), 573 U.S. 208, 216 (2014). The

purpose of these exceptions is to protect the "basic tools of scientific and

technological work." Mayo Collaborative Servs. v. Prometheus Labs., Inc.

("Mayo"), 566 U.S. 66, 71 (2012). Eligibility "is a question of law" with

"underlying questions of fact." Simio, LLC v. FlexSim Software Prods., Inc., 983

F.3d 1353, 1358–59 (Fed. Cir. 2020).

        In Alice, the Supreme Court reaffirmed the two-step framework set forth in

Mayo for distinguishing patents that claim ineligible subject matter from those that

claim patent-eligible applications of those concepts. Alice, 573 U.S. at 217.

        In step one, the court must determine whether the claims are drawn to a

patent-ineligible concept, such as an abstract idea. Id. The court examines the

focus of the claim and its character as a whole. SAP Am., Inc. v. InvestPic, LLC,

898 F.3d 1161, 1167 (Fed. Cir. 2018). Courts must consider whether the focus of

the claims is on "the specific asserted improvement in computer capabilities . . . or,

instead, on a process that qualifies as an 'abstract idea' for which computers are

invoked merely as a tool." Finjan, Inc. v. Blue Coat Sys., Inc. ("Finjan"), 879 F.3d

1299, 1303 (Fed. Cir. 2018) (quoting Enfish, LLC v. Microsoft Corp. ("Enfish"),

822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).

        If the claims are drawn to an abstract idea at step one of the analysis, the

court then turns to step two to examine "the elements of the claim both

individually and as an ordered combination" to see if there is an "inventive

concept–*i.e.*, an element or combination of elements that is sufficient to ensure that

the patent in practice amounts to significantly more than a patent upon the

ineligible concept itself." Alice, 573 U.S. at 217–218 (citations omitted). "A

claim that recites an abstract idea must include additional features to ensure that

the claim is more than a drafting effort designed to monopolize the abstract idea."

Id. at 221. Such "additional features" are not enough to constitute an inventive

concept if they are "well-understood, routine, conventional activities." Id. at 225

(citation omitted). To transform an unpatentable concept into a patent-eligible

application, "one must do more than simply state the [ineligible concept] while

adding the words 'apply it.'" Mayo, 566 U.S. at 72 (emphasis omitted).

## II.    Representative Claim

Apollo contends that the Court should treat Claim 1 as representative of all

20 claims of the '609 Patent because Claims 2–12 and 14–20 are nearly identical

with respect to patent eligibility. Def.'s Br. at 14. Apollo avers that the only other

independent claim, Claim 13, is identical except for a "generating" step that

precedes the "categorizing" step. Id. Apollo argues that all 20 claims of the '609

Patent are directed to the abstract idea of collecting and analyzing information

about potential and existing clients to generate recommendations for client

engagement, and that there are "minor differences" between the claims that do not

change the focus of the abstract idea.  Id. at 9, 14.  Apollo further argues that apart

from omitting step (a) of Claim 1 of the '609 Patent, Claim 1 of the '964 Patent is

identical to Claim 1 of the '609 Patent, and the Court should therefore treat Claim

1 of the '609 Patent as representative for § 101 purposes.  Id. at 9, 15.

        ZoomInfo disagrees that Claim 1 should be representative of all claims and

argues that Defendant ignores that the other claims, such as Claims 6 and 18,

which ZoomInfo alleges recite a regularization technique, have "additional non-

abstract subject matter that Defendant would have to overcome even if it were

correct as to [C]laim 1."  Pl.'s Resp. Br. at 3, 20 (emphasis omitted).

        A court may limit its analysis of a Section 101 challenge to representative

claims when the claims at issue are "substantially similar and linked to the same

ineligible concept."  Mobile Acuity Ltd. v. Blippar Ltd. ("Mobile Acuity"), 110

F.4th 1280, 1290 (Fed. Cir. 2024) (internal quotation omitted).  Courts may treat a

claim as representative "if the patentee does not present any meaningful argument

for the distinctive significance of any claim limitations not found in the

representative claim or if the parties agree to treat the claim as representative."  See

Berkheimer v. HP Inc., 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citations omitted).

        The patent challenger asserting that a claim is representative of multiple

claims bears the initial burden of making a prima facie showing that the group of

claims is substantially similar and linked to the same ineligible concept.  Mobile

Acuity, 110 F.4th at 1290.  If a prima facie showing is made, the burden shifts to

the patent owner to demonstrate why the eligibility of the purported representative

claim is not decisive of the eligibility of the other claims within the identified

group.  Id.  If the patent owner cannot make a non-frivolous argument against

treating the identified claim as representative, it is precluded from arguing the

eligibility of the other claims in the group.  Id.

Claim 1 of the '609 Patent recites:

A computer-implemented method wherein one or more computing devices comprising storage and a processor are programmed to perform steps comprising:

determining, using a computer, similarities between (a) fitness, engagement, and intent characteristics of a plurality of target clients and (b) fitness, engagement, and intent characteristics of an entity's existing clients;

generating recommendations for engagement with the plurality of target clients, wherein components of the recommendations for engagement are based on determined similarities between (a) the fitness, engagement, and intent characteristics of the plurality of target clients and (b) the fitness, engagement, and intent characteristics of the entity's existing clients;

categorizing a plurality of web pages, hyperlinks, and link structures located over the Internet using a trained classifier that uses features from content and code on web pages;

crawling, by a computer, the plurality of web pages, hyperlinks, and link structures based on the categorization of the plurality of web pages, hyperlinks and link structures to collect third party unstructured text information; and

> generating a feature matrix for the target client and comparing one or
> more value of the feature matrix of the target client with one or more
> values of a feature matrix for the entity's existing clients to generate the
> recommendations of engagement.

'609 Patent at 17:12–39.

> Claim 1 of the '964 patent is nearly identical, reciting:

> A computer-implemented method, wherein one or more computing
> devices comprising storage and a processor are programmed to perform
> steps comprising:

> generating recommendations for engagement with the plurality of
> target clients, wherein components of the recommendations for
> engagement are based on determined similarities between (a) a fitness,
> engagement, and intent characteristics of a plurality of target clients and
> (b) a fitness, engagement, and intent characteristics of an entity's
> existing clients;

> categorizing a plurality of web pages, hyperlinks, and link structures
> located over the Internet using a trained classifier that uses features
> from content and code on web pages;

> crawling, by a computer, the plurality of web pages, hyperlinks, and
> link structures based on the categorization of the plurality of web pages,
> hyperlinks, and link structures to collect third party unstructured text
> information; and

> generating a feature matrix for the target client and comparing one or
> more value of the feature matrix of the target client with one or more
> values of a feature matrix for the entity's existing clients to generate the
> recommendations of engagement.

'964 Patent at 17:12–35.  The '609 and '964 Patents share a common specification

and claim priority to the same provisional application.  '609 Patent at [60]; '964

Court No. 25-00324                                                    Page 14

Patent at [60].  The '964 Patent is a continuation of the '609 Patent.  '964 Patent at [63].

As the party challenging the '609 Patent, Apollo has the initial burden to make a prima facie showing that the representative claim is "substantially similar and linked to the same" allegedly abstract concept of collecting and analyzing information about potential and existing clients to generate recommendations for client engagement as the other claims at issue.  Mobile Acuity, 110 F.4th at 1290.

The '609 Patent includes twenty claims, with two independent claims: method Claim 1 and system Claim 13.  '609 Patent at 17:12–39, 18:33–61.  Apollo argues that system Claim 13 repeats the same steps as Claim 1 but reframes the alleged inventions as "'[a] physical article of manufacture including one or more devices encoding computer-executable instructions for executing' the same steps, with the final 'generating feature matrix' step moved up to precede 'categorizing a plurality of web pages.'"  Def.'s Br. at 6; compare '609 Patent at 17:12–39 with '609 Patent at 18:33–61.

Apollo claims that both Asserted Patents recite the same dependent claims, adding similarly functional results for collecting, analyzing, and presenting data.  Def.'s Br. at 6.  Apollo contends that Claims 2 and 14 depend from Claim 1, and analyze data to generate characteristics.  Id.; compare '609 Patent at 17:12–39 with '609 Patent at 17:40–44 and '609 Patent at 18:63–65.  Apollo avers that Claims 3

and 15 depend from Claim 1 and traverse a website and categorize, analyze, and

extract data. Def.'s Br. at 6; compare '609 Patent at 17:12–39 with '609 Patent at

17:45–54 and '609 Patent at 18:66–19:7. Apollo asserts that Claims 4 and 16

depend from Claim 1 and adjust parameters of the crawling using automated

machine learning. Def.'s Br. at 6; compare '609 Patent at 17:12–39 with '609

Patent at 17:55–58 and '609 Patent at 19:8–11. Apollo states that Claims 5 and 17

depend from Claim 1 and present recommendations. Def.'s Br. at 6; compare '609

Patent at 17:12–39 with '609 Patent at 17:59–61 and '609 Patent at 19:12–15.

Apollo argues that Claims 6, 18, and 19 depend from Claim 1 and determine

predictive values and adjust or apply a regularization function. Def.'s Br. at 6–7;

compare '609 Patent at 17:12–39 with '609 Patent at 17:62–18:4 and '609 Patent at

19:16–27. Apollo contends that Claims 7 and 20 depend from Claim 1 and

optimize an objective function. Def.'s Br. at 7; compare '609 Patent at 17:12–39

with '609 Patent at 18:5–6 and '609 Patent at 19:28–30. Apollo avers that Claim 8

depends from Claim 1 and traverses internal data sources to generate

characteristics. Def.'s Br. at 7; compare '609 Patent at 17:12–39 with '609 Patent

at 18:7–11. Apollo asserts that Claim 9 depends from Claim 1 and determines

additional engagement characteristics. Def.'s Br. at 7; compare '609 Patent at

17:12–39 with '609 Patent at 18:12–17. Apollo states that Claim 10 depends from

Claim 1 and presents results using a graphical user interface. Def.'s Br. at 7;

compare '609 Patent at 17:12–39 with '609 Patent at 18:18–23.  Apollo argues that

Claim 11 depends from Claim 1 and limits recommendations of engagement to an

observed purchasing pattern.  Def.'s Br. at 7; compare '609 Patent at 17:12–39

with '609 Patent at 18:24–28.  Apollo contends that Claim 12 depends from Claim

1 and limits the intent characteristic to a publicly available browsing behavior.

Def.'s Br. at 7; compare '609 Patent at 17:12–39 with '609 Patent at 18:29–32.

ZoomInfo argues that the '609 Patent claims are not directed to an abstract

idea but instead to a specific manner of web crawling that reflects an improvement

in the functioning of a computer.  Pl.'s Resp. Br. at 4.  ZoomInfo contends that the

specific manner of web crawling is an improvement because:

> [W]hile 'traditional crawlers traverse a network of web pages by
> recursively following the hyperlinks found on each visited page,' the
> inventive system is 'smarter' and improved [because] it crawls websites
> to also 'collect and analyze unstructured text' and 'categorizes'
> information in a way that 'guides the web crawling procedure,' such
> that 'one or more crawling procedures and parameters' are adjusted
> 'based on' the 'results of the categorization operation.'"

Id. at 4–5 (internal citations omitted).

Apollo argues that all claims (Claims 1–20) of the '609 Patent are invalid

under 35 U.S.C. § 101 because they are directed to the abstract idea of collecting

and analyzing information about potential and existing clients to generate

recommendations for client engagement.  See Def.'s Br. at 9.  The Court observes

that Claims 2–12 and 14–20 describe using generic computer-implemented

methods for determining similarities, generating and categorizing content, crawling

that content, and generating a feature matrix. '609 Patent at 17:40–18:32; 18:62–

19:30. These functions are nearly identical to the method of using one or more

computing devices to achieve functional results for determining similarities

between target and existing clients, generating recommendations, categorizing

Internet content, crawling that content, and generating a feature matrix and

comparing its values to generate recommendations. '609 Patent at 17:12–39.

The Court holds that Apollo has made a prima facie showing that the '609

Patent claims are "substantially similar and linked to the same" allegedly abstract

concept of collecting and analyzing information about potential and existing clients

to generate recommendations for client engagement. Mobile Acuity, 110 F.4th at

1290.

The burden now shifts to ZoomInfo to present a non-frivolous argument for

why the eligibility of Claim 1 cannot be fairly treated as representative of all

claims. Id. ZoomInfo states that while it is true that the non-abstract subject

matter of Claim 1 is also present in all other claims, the other claims have

additional non-abstract subject matter, such as Claims 6 and 18 of the '609 Patent's

recitation of a regularization technique based on the feature matrix. Pl.'s Resp. Br.

at 20. ZoomInfo has not shown that any of the additional non-abstract subject

matter contained in the remaining '609 Patent claims are significantly distinct from

those in Claim 1 and would require a separate eligibility analysis.  See Berkheimer, 881 F.3d at 1365.  The Court further notes that ZoomInfo's Amended Complaint does not address any of the '609 Patent claims other than Claim 1, and that the '609 and '964 Patents are directed to the same computing devices and systems programmed to crawl the Internet to predictively generate client data as set forth in the shared specification of the Asserted Patents.  See Am. Compl. at ¶ 36. Accordingly, the Court will consider Claim 1 of the '609 Patent as representative of the other patent claims.

## A. **Alice** Step One

The Court first assesses Alice's step one, examining the "character as a whole" or "focus" of the claims to determine whether they are "directed to" an abstract idea.  SAP Am., Inc., 898 F.3d at 1167.  District courts may compare the claims at issue to claims already found to be directed to an abstract idea in previous cases to inform the step one analysis.  See Enfish, 822 F.3d at 1334.

The U.S. Court of Appeals for the Federal Circuit ("CAFC") has "treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas[,]" along with the analysis and display of information.  Elec. Power Grp., LLC v. Alstrom S.A. ("Electric Power Group"), 830 F.3d 1350, 1353 (Fed. Cir. 2016). "[E]ven if a process of collecting and analyzing information is 'limited to

particular content' or a particular 'source,' that limitation does not make the

collection and analysis other than abstract." <u>SAP Am., Inc.</u>, 893 F.3d at 1168; <u>see</u>

<u>also</u> <u>In re TLI Commc'ns LLC Patent Litig.</u>, 823 F.3d 607, 611 (Fed. Cir. 2016)

(concluding that claims that classify an image and store the image based on its

classification is directed to the abstract idea of classifying and storing digital

images in an organized manner and fail to add an inventive concept sufficient to

confer patent eligibility); <u>FairWarning IP, LLC v. Iatric Sys., Inc.</u>, 839 F.3d 1089,

1096 (Fed. Cir. 2016) (concluding that claims directed to collecting and analyzing

information to detect misuse and notify a user when misuse is detected merely

grafts generic computer components onto otherwise-ineligible method claims and

are patent-ineligible); <u>CardioNet, LLC v. InfoBionic, Inc.</u>, 955 F.3d 1358, 1371

(Fed. Cir. 2020) (concluding that claims directed to collecting, analyzing, and

displaying cardiac data are abstract concepts); <u>Content Extraction & Transmission</u>

<u>LLC v. Wells Fargo Bank, Nat'l Ass'n</u>, 776 F.3d 1343, 1347 (Fed. Cir. 2014)

(concluding that the claims of the asserted patents are drawn to the abstract idea of

collecting data, recognizing certain data within the collected data set, and storing

that recognized data); <u>Nielsen Co. (US) LLC v. VideoAmp, Inc.</u>, No. 24-123-

RGA, 2025 WL 961421, at *2–3 (D. Del. Mar. 31, 2025) (applying the same

analysis to collecting, "generating," and "determining" steps and finding the

"specific context of modeling audience viewing behavior makes no difference").

The CAFC has explained that claims reciting those information collecting

concepts, either individually or collectively, "fall into a familiar class of claims"

directed to patent-ineligible concepts:

> Information as such is an intangible. Accordingly, we have
> treated collecting information, including when limited to particular
> content (which does not change its character as information), as within
> the realm of abstract ideas. In a similar vein, we have
> treated analyzing information by steps people go through in their
> minds, or by mathematical algorithms, without more, as essentially
> mental processes within the abstract-idea category. And we have
> recognized that merely presenting the results of abstract processes of
> collecting and analyzing information, without more (such as identifying
> a particular tool for presentation), is abstract as an ancillary part of such
> collection and analysis.

Electric Power Group, 830 F.3d at 1353–54 (internal citations omitted).

Claims that are directed to an abstract idea and applied with generic,

conventional computer components have been held consistently to be patent

ineligible. See Intell. Ventures I LLC v. Capital One Bank (USA), 792 F.3d 1363,

1367–69 (Fed. Cir. 2015) (claims adding generic computer components to

financial budgeting); OIP Techs. Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1362–

64 (Fed. Cir. 2015) (claims implementing offer-based price optimization using

conventional computer activities); Ultramercial. Inc. v. Hulu, LLC

("Ultramercial"), 772 F.3d 709, 714–17 (Fed. Cir. 2014) (claims applying an

exchange of advertising for copyrighted content to the Internet); buySAFE, Inc. v.

Google, Inc., 765 F.3d 1350, 1354–55 (Fed. Cir. 2014) (claims adding generic

computer functionality to the information of guaranteed contractual relationships).

Apollo contends that the claims of the '609 Patent are directed to the abstract

idea of collecting and analyzing information about potential and existing clients to

generate recommendations for client engagement and embody a fundamental

economic practice long prevalent in the system of commerce.  Def.'s Br. at 9–11

(citing SAP Am., 898 F.3d at 1167; Alice, 573 U.S at 219 (quotation omitted)).

Defendant asserts that with the exception of generic computer-implemented steps,

there is nothing in the claims of the '609 Patent themselves that foreclose them

from being performed by a human, mentally or with pen and paper.  Id. at 12

(citing Intell. Ventures I LLC v. Symantec Corp., 838 F.3d 1307, 1318 (Fed. Cir.

2016); Credit Acceptance Corp. v. Westlake Servs., 859 F.3d 1044, 1055 (Fed. Cir.

2017)).  Defendant argues that the claims of the '609 Patent do no more than

describe a desired function or outcome, without providing any limiting detail that

confines the claim to a particular solution to an identified problem, and that the

claims of the '609 Patent do not reflect any alleged specific asserted improvement

in computer capabilities.  Id. at 12–14 (citing Affinity Labs of Tex., LLC v.

Amazon.com Inc., 838 F.3d 1266, 1269 (Fed. Cir. 2016); Electric Power Group,

830 F.3d at 1356; Int'l Bus. Machines Corp. v. Zynga Inc., 642 F. Supp. 3d 481,

492–93 (D. Del. 2022); Smart Sys. Innovations, LLC v. Chi. Transit Auth., 873

F.3d 1364, 1372 (Fed. Cir. 2017); <u>Customedia Techs., LLC v. Dish Network</u>

<u>Corp.</u>, 951 F.3d 1359, 1364 (Fed. Cir. 2020).  Apollo analogizes Claim 1 of the

'609 Patent to two cases for the step one analysis.  <u>Id.</u> at 9–14 (citing <u>Nice Sys.</u>

<u>Ltd. v. Clickfox, Inc.</u>, 207 F. Supp. 3d 393 (D. Del. 2016), <u>aff'd</u>, 698 F. App'x. 615

(Fed. Cir. 2017); <u>DiStefano Pat. Tr. III, LLC v. LinkedIn Corp.</u>, 346 F. Supp. 3d

616 (D. Del. 2018), <u>aff'd</u>, 784 F. App'x 785 (Fed. Cir. 2019)).

　　　ZoomInfo responds that the CAFC distinguishes between claims that "are

directed to an improvement in computer functionality" versus claims that simply

apply the abstract notion of automation and computerization to another field.  Pl.'s

Resp. Br. at 10 (citing <u>Enfish</u>, 822 F.3d at 1335; <u>McRO, Inc. v. Bandai Namco</u>

<u>Games Am., Inc.</u>, 837 F.3d 1299, 1316 (Fed. Cir. 2016)).  Plaintiff contends that

the claims of the '609 Patent recite technological improvements over prior web

page crawling device systems and that these improvements to the functioning of

computers use non-abstract structures such as "'web pages, hyperlinks, and link

structures,' 'content and code on web pages,' 'unstructured text,' 'and feature

matrices' in a new way."  Pl.'s Resp. Br. at 11.  ZoomInfo argues that the claimed

concrete components result in improved computer functioning by better utilizing

computer resources and allowing a computer to traverse the environment more

effectively and efficiently.  <u>Id.</u> at 11–12. ZoomInfo avers that Defendant's

argument does not explain how a human could crawl the Internet without a

computer, use content and code from web pages without a computer, follow hyperlinks without a computer, categorize features and collect unstructured text based on categorization without a computer, correct for the overfitting of data without a computer, or score data and generate personalized, actionable recommendations.  Id. at 12.  ZoomInfo analogizes Claim 1 of the '609 Patent to two cases for the step one analysis.  Id. at 15–16 (citing Enfish; Data Health Partners, Inc. v. Teladoc Health, Inc. ("Data Health"), 734 F. Supp. 3d 315 (D. Del. 2024)).

In Enfish, the CAFC reaffirmed that claims "adding conventional computer components to well-known business practices" are ineligible.  822 F.3d at 1338. The claims in Enfish were upheld because the CAFC found that they were entirely different, reciting "a four-step algorithm" that created a "self-referential table [that] functions differently than conventional database structures" and "improve[s] the way a computer stores and retrieves data in memory."  Id. at 1336–37, 1339.  In contrast to the claims in Enfish, where the claims functioned differently than conventional database structures, ZoomInfo's specifications in the Asserted Patents state that the claims can use any existing "[d]ata store" or "databases," resulting in no unconventional data structures, let alone technologies that improve computer memory or storage.  See '609 Patent at 16:55–59.

ZoomInfo argues that the claims "'go beyond requiring the collection, analysis, and display of available information in a particular field,' and instead provide 'technical means for performing the functions that are . . . an advance over conventional computer and network technology.'"  Pl.'s Resp. Br. at 16 (citing Data Health, 734 F. Supp. 3d at 326).  In Data Health, this Court found that the claims went beyond mere "collection, analysis, and display of data" by "improv[ing] the monitoring of goal outcomes for patients" and allowing physicians to "'intervene at crucial times to enhance the client's adherence to his or her unique regimen.'"  Data Health, 734 F. Supp. 3d at 326.  ZoomInfo's patents do not go beyond mere "collection, analysis, and display of data."  Rather, the Asserted Patents admittedly automate a "sales and marketing" practice that "[e]very business" performs, '609 Patent at 1:23–38, which is "a fundamental economic practice."  Alice, 573 U.S. at 219.  The Court is not persuaded by ZoomInfo's argument that the Asserted Patents go beyond the mere collection, analysis, and display of data because the focus of the claims is on "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." See Enfish, 822 F.3d at 1336.

The '609 Patent consists of "[a]n automated predictive analytics system" for "generating sales leads with lead engagement recommendations."  See '609 Patent at 1:36–38.  The '609 Patent describes a system that determines similarities

between fitness, engagement, and intent characteristics of a plurality of target

clients and fitness, engagement, and intent characteristics of an entity's existing

clients.  <u>See</u> '609 Patent at 17:15–18.  The system generates recommendations for

engagement with the plurality of target clients when components of the

recommendations for engagement are based on determined similarities between the

fitness, engagement, and intent characteristics of the plurality of target clients and

the fitness, engagement, and intent characteristics of the entity's existing clients.

<u>See</u> '609 Patent at 17:19–25.  The system presents the plurality of leads with

recommendations of engagement to using a graphical user interface at the

application layer of the system.  <u>See</u> '609 Patent at 17:35–39.

　　　　Claim 1 includes five steps directed to a specific manner of web crawling.

The steps include: (1) determining similarities between fitness, engagement, and

intent characteristics of a plurality of clients and fitness, engagement, and intent

characteristics of an entity's existing clients using a computer; (2) generating

recommendations for engagement with the plurality of target clients with

recommendations for engagement based on determined similarities between target

clients and existing clients; (3) categorizing web pages, hyperlinks, and links

structures using a trained classifier that uses features from content and code on web

pages; (4) crawling the web pages, hyperlinks, and link structures based on the

categorization of the web pages, hyperlinks, and link structures to collect third

party unstructured text information; and (5) generating a feature matrix for the target client and comparing one or more value of the feature matrix of the target client with one or more values of a feature matrix for the entity's existing clients to generate the recommendations of engagement.  See '609 Patent at 17:12–39.

Under 35 U.S.C. § 101, the CAFC has invalidated claims that merely apply computer technology to collecting information, analyzing it, and displaying results of the collection and analysis.  See, e.g., Electric Power Group., 830 F.3d at 1353; SAP Am., 898 F.3d at 1167.  The CAFC concluded that the claims in Electric Power Group were directed to non-patent eligible subject matter:

> The claims in this case fall into a familiar class of claims 'directed to' a patent-ineligible concept.  The focus of the asserted claims, . . . is on collecting information, analyzing it, and displaying certain results of the collection and analysis . . . Here, the claims are clearly focused on the combination of those abstract-idea processes.  The advance they purport to make is a process of gathering and analyzing information of a specified content, the displaying the results, and not any particular assertedly inventive technology for performing those functions.  They are therefore directed to an abstract idea.

Electric Power Group at 1353–54.

Similar to Claim 1 of the '609 Patent, the claims in Electric Power Group recited processes relating to collecting information, analyzing it, and displaying certain results of the collection and analysis.  Id. at 1353.  Claim 1 recites similar limitations directed to determining similarities between target clients and existing clients, generating recommendations for engagement with target clients based on

similarities between target clients and existing clients, and generating a feature

matrix for the target client and comparing it to a feature matrix of existing clients

to generate recommendations of engagement. '609 Patent at 17:12–39. The Court

concludes that nothing in representative Claim 1, understood in light of the

specification, requires anything other than conventional computer technology for

sales and marketing processes relating to collecting, analyzing, and displaying

information.

Therefore, the Court concludes that Claim 1 of the '609 Patent is directed to

the abstract idea of collecting information, analyzing it, and displaying certain

results of the collection and analysis. Because Claim 1 is the representative claim,

and Plaintiff's Amended Complaint alleges only Claim 1 to support its patent

infringement allegations, the Court does not provide an analysis of Claims 2–20.

The Court now turns to step two of the Alice Analysis.

## B. Alice Step Two

At step two, the Court looks at "the elements of each claim both individually

and 'as an ordered combination' to determine whether the additional elements

'transform the nature of the claim' into a patent-eligible application." Alice, 573

U.S. at 217; see also Mayo, 566 U.S. at 73 (explaining that steps of claims must

amount to more than "well-understood, routine, conventional activity"). "The

question of whether a claim element or combination of elements is well-

understood, routine and conventional to a skilled artisan in the relevant field is a

question of fact . . . [and] must be proven by clear and convincing evidence."

Berkheimer, 881 F.3d at 1368.

Apollo argues that Claim 1 simply uses generic computer technology to

collect and analyze information about potential and existing clients to generate

recommendations for client engagement.  Def.'s Br. at 15.  ZoomInfo contends that

Claim 1 of the '609 Patent recites the inventive concept of improved technology

and functionality that "advanced the art" by specifically "tuning web crawling to

identify lead generations through categorization and dynamic adjustment."  Pl.'s

Resp. Br. at 18 (citing Am. Compl. at ¶ 36).  ZoomInfo avers that the Patent

Examiner "found that the patent claims recite 'inventive concepts because they

provide an improved methodology of web crawling' due to the 'specificity in the

claimed procedure for crawling'" and that "'the combination of claimed steps

gather data in an unconventional way and therefore include an 'inventive

concept.'"  Id. (internal citations omitted).  ZoomInfo argues that the Patent

Examiner's findings are entitled to deference and must be presumed true for the

purposes of Rule 12(b)(6).  Id. at 18–19.  Apollo replies that Claim 1 is missing an

inventive concept.  Def.'s Reply Br. at 9 (citing Two-Way Media Ltd. v. Comcast

Cable Commc'ns, LLC, 874 F.3d 1329 (Fed. Cir. 2017)).  Apollo further replies

that ZoomInfo's reliance on the Patent Examiner's findings is legally incorrect and

asserts that courts are not required to defer to Patent Office determinations as to eligibility on motions to dismiss.  Id. at 9–10 (citing Sanderling Mgmt. v. Snap Inc., 65 F.4th 698 (Fed. Cir. 2023)).

The Court is not required to defer to or consider Patent Office determinations as to eligibility because patent eligibility is a matter of law.  See Beterio, LLC v. DraftKings Inc., 104 F.4th 1350, 1359 (Fed. Cir. 2024) ("[A] patent examiner's consideration of Section 101 issues does not in any way shield the patent's claims from Article III review for patent eligibility." (internal quotation omitted)); Sanderling Mgmt. Ltd., 65 F.4th at 705 (Fed. Cir. 2023) ("[C]ourts are not required to defer to Patent Office determinations as to eligibility.").

Claim 1 recites "[a] computer-implemented method" where "one or more computing devices comprising storage and a processor" generate recommendations, categorize using a trained classifier, and crawl using a computer.  See '609 Patent at 17:12–39.  The Amended Complaint contends that the Asserted Patents are "directed to computing devices and systems programmed to crawl the Internet to predictively generate client data in a new and novel way, based on specific technological solutions."  Am. Compl. at ¶ 36.  The Amended Complaint avers that "conventional machine-learning models suffer from overfitting or underfitting, but the claimed invention improves model training with

a 'novel regularization technique.'" Id.  In its Amended Complaint, ZoomInfo

claims the Asserted Patents' shared specification teaches benefits of the

technological improvements, including that "'the categorization of each page

and/or hyperlink . . . to control or guide the crawl procedure . . . can significantly

reduce the number of irrelevant pages crawled, reduce the time required from

crawling a company's website and also increases the precision or recall . . . and

reduces storage requirements.'" Id.  The Amended Complaint alleges that the

improved technology and functionality "advanced the art . . . by specifically tuning

web crawling to identify lead generations through categorization and dynamic

adjustment."  Am. Compl. ¶ 36; see '609 Patent at 3:27–46, 6:20–30, 10:40–66,

11:7–59, 12:3–50, 17:10–34.

        At this stage of the case in a motion to dismiss, the Court must accept

ZoomInfo's factual allegations as true and draw all reasonable inferences in

ZoomInfo's favor as the non-movant, and the Court concludes that it is plausible

that the methods claimed in the Asserted Patents represent technological

improvements in computing devices and systems programmed to crawl the Internet

to predictively generate client data, including the categorization of each page

and/or hyperlink to control or guide the crawl procedure, significantly reducing the

number of irrelevant pages crawled, reducing the time required from crawling a

company's website, and increasing the precision or recall and reduces storage

Court No. 25-00324                                                    Page 31

requirements.  Therefore, the Court holds that the '609 Patent plausibly recites

patent eligible subject matter under § 101.  Because the representative claim

satisfies the second step of the <u>Alice</u> test for patent eligibility, Apollo's motion to

dismiss is denied.

## CONCLUSION

Upon consideration of Plaintiff's Amended Complaint (D.I. 20),

Defendant's Motion to Dismiss (D.I. 25), Plaintiff's Answering Brief in

Opposition to Defendant's Motion to Dismiss (D.I. 32), Defendant's Reply in

Support of its Motion to Dismiss (D.I. 35), and all other papers and proceedings in

this action, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (D.I. 25) is denied; and it is

further

**ORDERED** that the claim construction hearing shall be held on May 7,

2026, at **2:30 p.m.** (instead of 9:30 a.m.) at the J. Caleb Boggs Federal Building in

Wilmington, DE.  All other dates in the Fourth Amended Scheduling Order (D.I.

59) remain the same.

IT IS SO ORDERED this 15th day of December, 2025.

<u>/s/ Jennifer Choe-Groves</u>
Jennifer Choe-Groves
U.S. District Court Judge*

---

* Judge Jennifer Choe-Groves, of the United States Court of International Trade,
sitting by designation.